FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

NOV 1 6 2021

MITCHELL R. ELFERS
CLERK

21cv1102 MV-CG

# §2254

# FEDERAL

# HABEAS

# CORPUS

# Packet

As mentioned above, the District of New Mexico has offices in three locations. The main office is in Albuquerque, with divisional offices in Santa Fe and Las Cruces. Unless otherwise directed, all communication to the court should be addressed to the Clerk of Court, United States District Court, District of New Mexico, using the address for the division where the subject case has been assigned. The three addresses are:

| | |
|---|---|
| **Albuquerque** | Pete V. Domenici United States Courthouse<br>333 Lomas Blvd NW<br>Suite 270<br>Albuquerque, NM 87102-9843 |
| **Las Cruces** | United States Courthouse<br>200 East Griggs Avenue<br>Las Cruces, NM  88001 |
| **Santa Fe** | Santiago E. Campos United States Courthouse<br>South Federal Place<br>P.O. Box 2384<br>Santa Fe, NM  87504 |

The forms referred to in this guide are available from the Clerk's Office. Many of the forms can also be downloaded from the court's website at http://www.nmcourt.fed.us. Additional information about the federal courts can be found at:

> Understanding the Federal Courts http://www.uscourts.gov/understand02/
> Inside the Federal Courts http://www.fjc.gov/federal/courts.nsf

## LAW LIBRARY RESOURCES

The following is a list of the law libraries available to the public.

| Albuquerque | Santa Fe | Las Cruces |
|---|---|---|
| University of New Mexico<br>School of Law<br>1117 Stanford NE | New Mexico Supreme Court<br>237 Don Gaspar | Third Judicial District Court<br>for Dona Ana County<br>201 West Picacho |

# RESOURCES FOR LEGAL REPRESENTATION

If you can afford to hire an attorney but cannot locate one, many local bar associations have lawyer referral services. Some of these services offer consultations with attorneys at reduced rates. There are also a number of organizations which may provide legal assistance at no cost — or *pro bono*. Most of these organizations have income eligibility requirements and many only provide assistance with specific types of cases. **Court staff cannot recommend individual attorneys.** Below is a listing of some of the lawyer referral services in New Mexico.

| Resource | Contact Information |
|---|---|
| American Civil Liberties Union of New Mexico | 505-266-5915, 800-773-5706 |
| Client/Attorney Assistance Program | 505-797-6068, 800-876-6227 |
| Lawyers Assistance Hotline | 505-228-1948, 800-860-4914 |
| Lawyers Care Referral Program | 505-797-6066, 800-876-6227 |
| Lawyer Referral for the Elderly Program<br>(Serves all counties with limited services in Bernalillo County) | 505-797-6005, 800-876-6657 |
| Legal Facs (Volunteer Lawyers)<br>(Mostly civil/domestic matters; serves Bernalillo County) | 505-256-0417 |
| Native American Protection & Advocacy Project | 800-862-7271 |
| NM Legal Aid/Albuquerque Office | 505-243-7871 |
| NM Legal Aid/Gallup Office | 505-722-4417, 800-524-4417 |
| NM Legal Aid/Las Cruces Office | 575-541-4800, 866-515-7667 |
| NM Legal Aid/Santa Fe Office | 505-982-9886, 800-373-9881 |
| San Juan County Legal Services, Inc.<br>(Serves San Juan County) | 505-325-8886, 800-789-7997 |
| Senior Citizens' Law Office, Inc.<br>(Serves Bernalillo County) | 505-265-2300 |

AO 241
(Rev. 06/13)

Page 1

# Petition for Relief From a Conviction or Sentence
## By a Person in State Custody

### (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus)

### Instructions

1. To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from the conviction or the sentence. This form is your petition for relief.

2. You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3. Make sure the form is typed or neatly written.

4. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5. Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or arguments, you must submit them in a separate memorandum.

6. You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you. If your account exceeds $ _____ , you must pay the filing fee.

7. In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

8. When you have completed the form, send the original and ____ copies to the Clerk of the United States District Court at this address:

    **Clerk, United States District Court for**
    **Address**
    **City, State  Zip Code**

9. **CAUTION:** You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

10. **CAPITAL CASES:** If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.

AO 241
(Rev. 06/13)

Page 2

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: |
|---|---|

| Name (under which you were convicted): *Rigoberto Rodriguez* | | Docket or Case No.: *D-202-CR-2010-00954* |
|---|---|---|
| Place of Confinement: *Lea County Correctional Facility 6900 w. Millen Dr Hobbs NM 88244* | Prisoner No.: *52582* | |

| Petitioner (include the name under which you were convicted) *Rigoberto Rodriguez* | Respondent (authorized person having custody of petitioner) v. *State of New Mexico* |
|---|---|

| The Attorney General of the State of: *Hector Balderaz* |
|---|

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

    *2nd Judicial District Court*
    *Bernalillo County*

    (b) Criminal docket or case number (if you know): *CR # D-202-CR-2010-00954*

2. (a) Date of the judgment of conviction (if you know): *8-20-2013  1-28-2013*

    (b) Date of sentencing: *8-20-2013*

3. Length of sentence: *2 30 yr Terms + 39 ½*

4. In this case, were you convicted on more than one count or of more than one crime? ☑ Yes   ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case:

    *2 separate, consecutive life terms 30 years*
    *1, first degree murder 2, first degree murder, Armed robbery,*
    *3, tampering with evidence, conspiracy to commit felony murder,*
    *5 conspiracy to commit first degree murder by deliberate killing,*
    *6 Conspiracy to commit first degree murder by deliberate killing*
    *7, Conspiracy to commit felony murder 8 conspiracy to commit armed*
    *robbery, 9, tampering with evidence*

6. (a) What was your plea? (Check one)

    ☑ (1) Not guilty          ☐ (3) Nolo contendere (no contest)

    ☐ (2) Guilty              ☐ (4) Insanity plea

AO 241
(Rev. 06/13)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?   N/A

_____

_____

_____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

☒ Jury     ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes     ☒ No

8. Did you appeal from the judgment of conviction?

☒ Yes     ☐ No

9. If you did appeal, answer the following:

'DIRECT APPEAL'

(a) Name of court:  2nd Judicial court District Bernalillo county

(b) Docket or case number (if you know):  CR # D-202-CR-2010-00954

(c) Result:  denied

(d) Date of result (if you know):  10-17-2016   And state Habeas Corpus

3-13-2017

(e) Citation to the case (if you know): _____

(f) Grounds raised: _____

[ SEE ATTACHMENT ]
(A.)

_____

_____

_____

_____

(g) Did you seek further review by a higher state court?   ☒ Yes   ☐ No

If yes, answer the following:

'STATE HABEAS CORPUS'

(1) Name of court:  2nd Judicial District court Bernalillo County

(2) Docket or case number (if you know):  CR # D-202-CR-2010-00954

(3) Result:  got a evidencuary hearing then denied

(4) Date of result (if you know):  Nov 2019   10-13-2020

AO 241
(Rev. 06/13)

(5) Citation to the case (if you know): UNKNOWN at this time

(6) Grounds raised: SEE ANSWERS TO QUESTIONS
10 & 11, (A) (B.) 1. + 2.

(h) Did you file a petition for certiorari in the United States Supreme Court?  ☐ Yes  ☑ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?  ☑ Yes  ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a)  (1) Name of court: Second Judicial District Court

(2) Docket or case number (if you know): CR#D202-CR-2010-00954

(3) Date of filing (if you know): 3-13-2017

(4) Nature of the proceeding: Pro-se petition for writ of Habeas Corpus

(5) Grounds raised: (A) prosecutorial misconduct Regarding the testimony of state witness Mario Martinez
(B) Ineffective Assistance of counsel by failure to hire (or under-utilize) an investigator who:
1.) could have interviewed and issued subpoenas for citizens who completed police canvassing questionnaires and,
2.) could have compared the length of petitioners shoes to the length of the bloody footprints at the crime scene

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☑ Yes  ☐ No

(7) Result: denied

(8) Date of result (if you know): 10-13-2020

AO 241
(Rev. 06/13)

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: N/A

(2) Docket or case number (if you know): N/A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised: N/A

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☑ Yes   ☐ No

(7) Result: DENIED

(8) Date of result (if you know): Oct 1ST 2019

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: 2Nd Judicial District Court Bernalilo County N.M.

(2) Docket or case number (if you know): D-202-CR-2010-00954

(3) Date of filing (if you know): May 7th 2019

(4) Nature of the proceeding: Evidentiary Hearing 9/23/2020

(5) Grounds raised: Ineffective assistance of Counsel, by failure to hire (or under-utilized an investigator who: 1.) could have interviewed and issued subpoenas for citizens who completed Police canvassing questionnaires; and 2.) Could have compared the length of Petitioners shoes to the length of the bloody footprints at the crime scene.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☑ Yes     ☐ No

(7) Result: _Denied_____

(8) Date of result (if you know): _Unclear on date but assuming Jan 2021_

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application,

or motion?

(1) First petition:     ☑ Yes     ☐ No

(2) Second petition:    ☐ Yes     ☑ No

(3) Third petition:     ☐ Yes     ☑ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_Appeal To highest STATE Court on 1ST Petition_

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution,
       laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts
       supporting each ground.

       **CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available
       state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set
       forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

GROUND ONE: _The District court erroneously admitted time limes and
MAPS Regarding Call From Various cell phones. Object lack of Foundation +
Hearsay_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_1) They allowed Testimony of hearsay of a U.S. Marshall that Never Took
The STAND. This Violation of Petitioners 6th amendment Rights.
2) Cell phones that were not issued to The Petitioner were used
as evidence against Petitioner where they Never had
phones AS evidence._

(b) If you did not exhaust your state remedies on Ground One, explain why: _All Remidies were
exhausted._

AO 241
(Rev. 06/13)

Page 7

**(c)**    **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: *Issues were Raised and denied.*

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☑ No    *Issues were only Raised on Direct Appeal.*

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: *N/A*

Name and location of the court where the motion or petition was filed: *N/A*

Docket or case number (if you know): *N/A*

Date of the court's decision: *N/A*

Result (attach a copy of the court's opinion or order, if available): *N/A*

*N/A*

(3) Did you receive a hearing on your motion or petition?    ☑ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: *N/A*

Docket or case number (if you know): *N/A*

Date of the court's decision: *N/A*

Result (attach a copy of the court's opinion or order, if available): *N/A*

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: *N/A*

AO 241
(Rev. 06/13)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: _Every issuse was used on the Direct appeal._

**GROUND TWO:** _Insufficent evidence to support Petitioner Conviction_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

_1) DNA Found at the scene exeluded the Petition & Co-defendant As the DNA Found on the Victim was an untested individual. 2) Petitioner was Found guilty from the Word of a CI. and was later [THE DNA THAT] the Footprints Found at the scene show that the CI's Testimony uncredible._

(b) If you did not exhaust your state remedies on Ground Two, explain why: _It was Exhausted through the direct appeal only._

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes   ☐ No

(2) If you did **not** raise this issue in your direct appeal, explain why: _We Did Exhaust thru Direct appeal._

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes   ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _N/A_

Name and location of the court where the motion or petition was filed: _N/A_

Docket or case number (if you know): _N/A_

Date of the court's decision: _N/A_

AO 241
(Rev. 06/13)

Result (attach a copy of the court's opinion or order, if available): *N/A*

_____

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: *N/A*

_____

Docket or case number (if you know): *N/A*

Date of the court's decision: *N/A*

Result (attach a copy of the court's opinion or order, if available): *N/A*

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: *N/A*

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two : *N/A*

_____

**GROUND THREE:** *Ineffective Assistance of Counsel by Failure to hire (or under-utilize) an investigator to pursue reasonable line of inquiry →*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

→ *in defense of a complex double Homicide.*

*Ineffective Assistance of Counsel by failure to hire (or under-utilize) an investigator who: 1.) could have interviewed and issued subpoenas for citizens who completed police canvassing questionnaires; and 2.) could have compared the length of Petitioner's shoes to the length of the bloody footprints at the Crime Scene*

*[SEE ATTACHMENT (B.)]*

(b) If you did not exhaust your state remedies on Ground Three, explain why: _Yes on STATE_ _HABEAS Corpus._

(c)   **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☑ Yes   ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: _was raised on habeas Corpus_

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _Habeas corpus,_

Name and location of the court where the motion or petition was filed: _2nd Judicial district Court Bernalillo County Albuquerque, New Mexico_

Docket or case number (if you know): _D-202-CR-2010-00954_

Date of the court's decision: _10-13-2020    12-11-2020_

Result (attach a copy of the court's opinion or order, if available): _12-11-2020 order Writ of habeas corpus, denying petition_

(3) Did you receive a hearing on your motion or petition?   ☑ Yes   ☐ No

(4) Did you appeal from the denial of your motion or petition?   ☑ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _New Mexico supreme court_

Docket or case number (if you know): _D-202-CR-2010-00954_

Date of the court's decision: _12-11-2020_

Result (attach a copy of the court's opinion or order, if available): _N/A_

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        ❏ Yes        ❏ No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ❏ Yes     ❏ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

AO 241
(Rev. 06/13)

Name and location of the court where the motion or petition was filed:

_____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?          ☐ Yes          ☐ No

(4) Did you appeal from the denial of your motion or petition?          ☐ Yes          ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?          ☐ Yes          ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:

_____

_____

_____

_____

_____

_____

AO 241
(Rev. 06/13)

13.     Please answer these additional questions about the petition you are filing:

  (a)     Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?   ☑ Yes     ☐ No

          If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

          _____

          _____

          _____

          _____

  (b)     Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

          _____

          _____

14.     Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?        ☐ Yes     ☑ No

        If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available.   _____

        _____

        _____

        _____

        _____

        _____

        _____

15.     Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?        ☐ Yes     ☐ No

        If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

        _____

        _____

        _____

        _____

        _____

        _____

AO 241
(Rev. 06/13)

16.  Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:   Troy Wayne Prichard

(b) At arraignment and plea:   Troy Wayne Prichard

(c) At trial:   Troy Wayne Prichard

(d) At sentencing:   Troy Wayne Prichard

(e) On appeal:   Jamshid Ghazi Askar / Matthias Swonger

(f) In any post-conviction proceeding:   Matthias Swonger

(g) On appeal from any ruling against you in a post-conviction proceeding:   Matthias Swonger

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        ☐ Yes    ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:        N/A

(c) Give the length of the other sentence:        N/A

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?        ☐ Yes    ☑ No

18.  TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

    (1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

        (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 06/13)

(2)    The time during which a properly filed application for State post-conviction or other collateral review with
respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation
under this subsection.

Therefore, petitioner asks that the Court grant the following relief: _____

_____

_____

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on ___11-10-21___ (month, date, year).

Executed (signed) on ___11-10-2021___ (date).

_____

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____

_____

SF-1915 Leave to Proceed

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

 NOV **1 6** 2021

MITCHELL R. ELFERS
CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

Rigoberto Rodriguez

                    Plaintiff(s)/Petitioner(s),

v                                                     No. CIV _____

                                                      D-202-CR-2010-00954

          Defendant(s)/Respondent(s).   State of New Mexico

---

### PRISONER'S MOTION AND AFFIDAVIT
### FOR LEAVE TO PROCEED PURSUANT TO 28 U.S.C. § 1915

---

I request leave to commence this civil action without prepayment of fees or security therefor

pursuant to 28 U.S.C. § 1915. In support of my request, I declare that:

(1)   I am unable to pay such fees or give security therefor.

(2)   The nature of this action is: _indigent and unable to pay_
_court cost and fees._
_____
_____
_____
_____
_____

(3)   I am entitled to redress.

(4)   I authorize the institution in which I am or have been incarcerated, to release any
information concerning my inmate account(s) or other information concerning
my financial affairs. I further authorize the agency having custody of me to
collect from my trust account and forward to the Clerk of this Court payments in
accordance with 28 U.S.C. § 1915(b)(2).

SF-1915 Leave to Proceed

(5)   I acknowledge and consent that a portion of any recovery, as directed by the Court, shall be paid to the Clerk for reimbursement of all fees and costs incurred by me as a result of being granted leave to proceed in forma pauperis.

6)   My assets and their value are listed below:
(Assets may include income from employment, rent payments, interest or dividends, pensions, annuities, life insurance payments, Social Security, Veteran's Administration benefits, disability pensions, Worker's Compensation, unemployment benefits, gifts or inheritances, cash, funds in bank accounts, funds in prison accounts, real estate, stocks, bonds, notes, automobiles or other valuable property (excluding ordinary household furnishings and clothing), or any other source of income.)

You may attach an additional page, if necessary.

_____

_____

_____

_____

_____

**REQUIRED CERTIFICATION:** you must attach to this motion and affidavit a certified copy of your trust fund account statement (or institutional equivalent) for the six-month period immediately preceding the filing of this action. You must obtain the certified copy of your trust fund account statement (or insutional equivalent) from the appropriate official or each penal instrtution at which you are or were confined during the six-month period."

I declare under penalty of perjury that the foregoing is true and correct.

Executed at _____ on _____
                        ( location )                              (date)


_____
**Prisoner's Original Signature**

2

SF-1915 Leave to Proceed

## Additional Page for Item 6

_ATTACHMENT_ (A.)

(f.) GROUNDS Raised

Pgs. 28 - 54

murder counts. *Id.* The district court did not vacate any of the

conspiracy convictions. *Id.*

## Argument

### I.     The Cellular Phone Evidence and Charts

### A.     Standard of Review

Rodriguez's argument invokes three different legal principles: his

constitutional right to confront witnesses against him, U.S. Const.

amend. VI; N.M. Const. art. II, § 14, the rule against hearsay, Rule 11-

802 NMRA, and the rule requiring witnesses to testify based on

personal knowledge, Rule 11-602 NMRA. A different standard of review

governs each claim, based on preservation (or lack thereof) and the

nature of the rule at issue.

### *(1).   Because the confrontation claim is an unpreserved constitutional issue, this Court should review for fundamental error.*

Rodriguez's confrontation argument involves testimony by

Detective Lavilla that certain phone numbers belonged to Rodriguez,

his brother Jaime, and Kelso, respectively. In the district court,

Rodriguez never made any confrontation objection to this testimony.

Because a party may only preserve a claim of error by making "a timely

objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon," Rodriguez's confrontation claim was not preserved. *State v. Montoya*, 2015–NMSC–010, ¶ 45, 345 P.3d 1056; *see also* Rule 12-216 NMRA.

As Rodriguez concedes, "defense counsel failed to specifically couch in objections in either hearsay or confrontation grounds . . ." [**BIC 24**]. He argues, however, that "defense counsel's arguments [about speculation] sufficiently alerted the mind of the trial court to preserve a claim that Marshal Hernandez's out of court declarations were hearsay, and his non-appearance violated the Confrontation Clause." [**BIC 24**]. The fact that defense counsel alluded to Agent Hernandez's absence in support of a speculation argument is not sufficient to preserve a confrontation claim. To preserve an issue, the appellant must invoke a ruling in the district court "on the *same grounds* argued in the appellate court." *State v. Garcia*, 2013–NMCA–064, ¶ 37, 302 P.3d 111 (emphasis added); *see also State v. Samora*, 2013–NMSC–038, ¶ 16, 307 P.3d 328; *cf. State v. King*, 2015–NMSC–030, ¶¶ 26-28, 357 P.3d 949 (applying different standards of review to different hearsay exceptions based on whether each exception was specifically raised at trial).

29

Because the confrontation issue was not preserved, this Court should review only for fundamental error. *State v. Cabezuela*, 2015–NMSC–016, ¶ 25, 350 P.3d 1145. Fundamental error exists where a conviction "shocks the conscience because either (1) the defendant is indisputably innocent, or (2) a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Astorga*, 2015–NMSC–007, ¶ 14, 343 P.3d 1245. The party alleging fundamental error has the burden of demonstrating both error and resulting prejudice. *State v. Sosa*, 2009–NMSC–056, ¶ 36, 147 N.M. 351; *see also Samora*, 2013–NMSC–038, ¶ 17; *State v. Cunningham*, 2000–NMSC–009, ¶ 21, 128 N.M. 711. This Court does not presume prejudice. *Sosa*, 2009–NMSC–056, ¶ 36.

### (2).   *Because the hearsay claim is an unpreserved evidentiary matter, this Court should review for plain error.*

Rodriguez also raises his hearsay claim for the first time on appeal. This claim is unpreserved for the same reasons that the confrontation claim is unpreserved—Rodriguez never raised it in the district court. *Montoya*, 2015–NMSC–010, ¶ 45; *see also* Rule 12-216. Because application of the rule against hearsay is a purely evidentiary

matter, however, this Court will review for plain error. *Montoya*, 2015–
NMSC–010, ¶ 46; *State v. Lucero*, 1993–NMSC–064, ¶ 13, 116 N.M.
450. Plain error is error that were not "brought to the attention of the"
district court but nevertheless affect the "substantial rights" of a party.
*Lucero*, 1993–NMSC–064, ¶ 13; *see also* Rule 11-103(E) NMRA. The
party alleging plain error has the burden of demonstrating prejudice.
*State v. Summerall*, 1986–NMSC–080, ¶¶ 3-4, 105 N.M. 82.

**(3).** ***Because the speculation claim was preserved with respect to***
***Dugan's testimony, this Court should review for abuse of***
***discretion regarding that testimony and otherwise for plain***
***error.***

The record shows that Rodriguez objected to Dugan's testimony as
being improper speculation. [**2-4-13 Tr. 100:14-101:20; 103:23-105:10**];
Rule 11-602. This issue was therefore a preserved evidentiary matter
subject to abuse-of-discretion review. *E.g., King*, 2015–NMSC–030,
¶ 23. To the extent that Rodriguez advances a speculation argument
regarding Detective Lavilla's testimony, this claim is unpreserved and
would be reviewed only for plain error. Rule 11-103(E) NMRA; *Lucero*,
1993–NMSC–064, ¶ 13.

31

**B.   Kelso's phone number, 435-5944, was the only number identified solely by Agent Hernandez.**

Mario Martinez testified that Rodriguez used 353-6451, Rodriguez and Kelso used 343-6450, and Jaime used 319-9680. [**1-29-13 Tr. 168:13-169:11**]. Jarlena Anderson testified that Connie's number was 315-1392 and David's was 315-1436. [**1-29-13 Tr. 89:25-90:14**]. Both Martinez and Anderson testified before Detective Lavilla. Thus, by the time Detective Lavilla testified, ownership of five of the six numbers in the case had already been established. Any analysis of the claimed errors must reflect the fact that Agent Hernandez's conclusions were cumulative with respect to every number except 435-5944.

**C.   Rodriguez acquiesced in the admission of the names associated with each phone.**

The party claiming fundamental error bears the burden of showing it on appeal. *Sosa*, 2009–NMSC–056, ¶ 36; *Cunningham*, 2000–NMSC–009, ¶ 21. The party cannot meet that burden if the party acquiesced in the admission of the challenged evidence at trial. *State v. Campos*, 1996–NMSC–043, ¶ 47, 122 N.M. 148 ("Acquiescence in the admission of evidence ... constitutes waiver of the issue on appeal."); *see also State v. Clark*, 1989–NMSC–010, ¶ 30, 108 N.M. 288, *overruled on*

32

*other grounds by State v. Henderson*, 1990–NMSC–030, ¶ 38, 109 N.M.
655.

A party does not acquiesce in the admission of evidence merely by
failing to object. Something more is required. That something more,
however, can be the strategic decision to forgo objection and pursue
cross-examination on the topic instead. *State v. Hill*, 2008–NMCA–117,
¶ 22, 144 N.M. 775; *State v. La Madrid*, 1997–NMCA–057, ¶ 17, 123
N.M. 463; *see also State v. Balderama*, 2004–NMSC–008, ¶ 20, 135
N.M. 329 (stating, in a different context, that "often counsel may
intentionally withhold objection to the admissibility of evidence for
strategic reasons").

The record suggests that Rodriguez's trial counsel made this type
of strategic decision, declining to object to Detective Lavilla's testimony
attributing ownership of the various numbers. Counsel was obviously
aware of facts that could possibly support a good-faith objection on
hearsay and confrontation grounds. *Cf.* [**1-30-13 Tr. 177:11-178:11**].
The decision to cross-examine instead may have been motivated by:
(1) the fact that five of the six numbers had already been established;
(2) the fact that Detective Lavilla's lack of personal knowledge

33

supported the defense's ultimate theme that the police did not take "ownership" of the case and "cut some corners;" **[2-5-13 Tr. 59:21-24; 64:23-65:2]**; *see also* **[2-5-13 Tr. 75:15-76:1]** (defense closing emphasizing Detective Lavilla's inability to explain the cell phone evidence); (3) the possibility that the State would respond to an objection by calling Agent Hernandez to the stand; **[2-4-13 Tr. 105:11-16]** (prosecutor's assertion that Agent Hernandez was available); or (4) defense counsel's knowledge of additional facts, not on the record, that may have undermined a confrontation argument. In closing, defense counsel explained, "I try my best not to make too many objections. . . [W]e don't have anything to hide." **[2-5-13 Tr. 78:13-17]**; *cf. State v. Barr*, 1999–NMCA–081, ¶ 32, 127 N.M. 504 (competent counsel may withhold objections to avoid appearance of "quibbling"). Rodriguez has not made any claim that defense counsel's decision constituted ineffective assistance of counsel.

Because the defense made a strategic decision to cross-examine rather than object, he acquiesced in the admission of Agent Hernandez's conclusions and has waived any claim of error. *Campos*, 1996–NMSC–043, ¶ 47; *Hill*, 2008–NMCA–117, ¶ 22.

34

**D.    Rodriguez cannot meet his burden of showing plain error or fundamental error.**

Even if Rodriguez had not acquiesced in the admission of the challenged evidence, he has not demonstrated plain or fundamental error.

***(1).   The record does not clearly show that the evidence violated the confrontation clause.***

If Rodriguez had made a timely objection on confrontation grounds, the State would have had the burden of showing that the Confrontation Clause was satisfied or that any error was harmless. *State v. Montoya*, 2014–NMSC–032, ¶ 49, 333 P.3d 935. Because Rodriguez did not preserve this issue, however, he bears the burden of showing that Detective Lavilla's testimony violated the Confrontation Clause and that this prejudiced him. *Sosa*, 2009–NMSC–056, ¶ 36; *Cunningham*, 2000–NMSC–009, ¶ 21.

That means Rodriguez has to show that Agent Hernandez's statements attributing ownership to the various numbers were "testimonial." *Crawford v. Washington*, 541 U.S. 36, 51, 54-55, 59 n. 9 (2004); *State v. Navarette*, 2013–NMSC–003, ¶ 7, 294 P.3d 435. Rodriguez asserts that Agent Hernandez's conclusion "was

communicated with the sole purpose of criminal prosecution." **[BIC 27]**. The record does not make that fact clear, however.

At the time the U.S. Marshals first requested the cell phone records, Rodriguez had not yet been identified or apprehended. **[2-4-13 Tr. 74:23-75:13]**; **[Ex. 114]** (records were requested and produced before February 10, 2010); **[1-29-13 Tr. 133:18-137:15]** (Martinez first identified Rodriguez on February 10, 2010); **[RP 12]** (Rodriguez was arrested February 26, 2010). It is entirely possible that Agent Hernandez was working in a situation where "the suspect is armed, remains on the loose, and his motives are unclear." *State v. Sisneros*, 2013–NMSC–049, ¶ 11, 314 P.3d 665. Recent confrontation jurisprudence suggests an expansive view of an "ongoing emergency" that renders assertions non-testimonial. *See Ohio v. Clark*, 135 S. Ct. 2173, 2181 (2015) (teachers' concern about whether to release a child "to his guardian at the end of the day" were an "ongoing emergency."). Overall, the record is silent as to the purpose, circumstances, and underlying sources of Agent Hernandez's conclusions.

This does not show that the conclusions were not testimonial. At most, it raises a serious question whether they were, a question

unanswered on the record. Because Rodriguez did not object at trial,

however, it is not the State's burden to show that the statements were

not testimonial, it is Rodriguez's burden to show that they were. *Cf.*

*Sosa*, 2009–NMSC–056, ¶ 36. His conclusory assertions do not meet

this burden.

**(2).   *Any prejudice from the unconfronted admission of Kelso's name is too minimal to constitute fundamental or plain error.***

As the party claiming fundamental error, Rodriguez "must

demonstrate prejudice from the errors he alleges; absent a showing of

prejudice, [he] cannot demonstrate error, let alone fundamental error."

*State v. Astorga*, 2015–NMCA–___, ¶ 5, ___ P.3d ___ (No. 32,374 Oct. 20,

2015).[1] Rodriguez's attempt to show prejudice on appeal fails to take

account of the fact that Detective Lavilla's testimony was mostly

cumulative. Before she conveyed Agent Hernandez's conclusions, other

testimony had already established five of the six name-number

associations. Crucially, Martinez had already testified that Rodriguez

---

[1] The Court of Appeals issued two opinions in the same case on the same day, each opinion addressing different issues. This citation is to the published opinion.

used both (505) 353-6451 and (505) 353-6450. **[1-29-13 Tr. 168:13-169:11]**.

Therefore, without any information from Agent Hernandez, the jury still would have had evidence that: (1) 353-6451, a number belonging to Rodriguez, exchanged calls with David Maldonado in the hour leading up to the murder **[Ex. 115 pg. 156-57]**; **[1-29-13 Tr. 89:25-90:14]**; **[2-4-13 Tr. 37:16-38:16]**; (2) Rodriguez also exchanged calls with his brother Jaime; **[Ex. 115 pg. 156-57]**; **[1-29-13 Tr. 168:13-169:11]**; **[2-4-13 Tr. 37:16-38:16]**; (3) Just before the murders, Rodriguez's phone was on the west side of Albuquerque, as was the victims' home; **[1-29-13 Tr. 77:9-11]**; **[2-4-13 Tr. 39:3-8; 43:1-44:22]**; **[Ex. 122]**; (4) Rodriguez's phone had no activity between 7:05 p.m. and 11:07 p.m. **[2-4-13 Tr. 44:23-45:17]**; **[Ex. 115 pg. 157]**.

The jury would also have had the other evidence of Rodriguez's connection to the murders including his confession to Martinez and Anderson's testimony about his name. **[1-29-13 Tr. 80:17-81:1; 84:7-85:13; 165:17-167:12]**.

Any hearsay assertion that 435-5944 belonged to Casandra Kelso could only have had minimal impact on the jury's decision. Rodriguez

therefore has not shown sufficient prejudice to support his claim of plain or fundamental error. *Sosa*, 2009–NMSC–056, ¶ 36; *Summerall*, 1986–NMSC–080, ¶¶ 3-4; *Astorga*, 2015–NMCA–___, ¶ 5.

**E.     The district court reasonably allowed Dugan's testimony and charts as summaries of already-admitted evidence.**

**(1).    *Summary Charts under Rules 1006 and 611.***

The rules of evidence generally permit two distinct types of summary charts or diagrams: (1) summaries of voluminous materials introduced under Rule 1006; and (2) "pedagogical" summaries under Rule 611(a). *E.g., United States v. White*, 737 F.3d 1121, 1135-36 (7th Cir. 2013) (providing an overview of summaries under these two rules), *cert. denied*, 134 S.Ct. 2717; *United States v. Renteria*, 720 F.3d 1245, 1252-53 (10th Cir. 2013); *United States v. Irvin*, 682 F.3d 1254, 1262-63 (10th Cir. 2012); *see also Ruiz v. Vigil-Giron*, 2008–NMSC–063, ¶¶ 7-10, 145 N.M. 280; Fed. R. Evid. 611(a); Fed. R. Evid. 1006; Rule 11-611(a); Rule 11-1006 NMRA. These two different types of summaries serve different purposes and are governed by different rules. *See* Larsen, Navigating the Federal Trial § 8:135 (2015 ed.).

Parties may use Rule 1006 summaries to "prove the content of voluminous writings" or other records when those records "cannot be

39

conveniently examined in court." Fed. R. Evid. 1006; Rule 11-1006. A Rule 1006 summary is substantive evidence of the contents of the summarized records. *White*, 737 F.3d at 1135. The records summarized must be admissible, but need not be admitted. *United States v. Hemphill*, 514 F.3d 1350, 1358-59 (D.C.Cir. 2008). Instead, "the point of Rule 1006 is to avoid introducing all the documents." *Id.*

Summaries under Rule 611 serve a different purpose. "These summaries are not substantive evidence—instead, the summaries are meant to aid the jury in its understanding of evidence that has already been admitted." *White*, 737 F.3d at 1135. While not explicitly discussed in the rule, these summaries are understood as falling within the trial court's "reasonable control over the mode and order of examining witnesses and presenting evidence." Fed. R. Evid. 611(a); Rule 11-611(a); *e.g.*, *Renteria*, 720 F.3d at 1252-53; *see also United States v. Janati*, 374 F.3d 263, 273 (4th Cir. 2004); *United States v. Olano*, 62 F.3d 1180, 1203-04 (9th Cir. 1995); *State v. Nance*, 2009–NMCA–024, ¶ 19, 145 N.M. 706 (stating, without referring to Rule 11-611, that "[d]iagrams and exhibits to illustrate testimony are admissible so long as they are not misleading.").

40

When parties employ a Rule 611 summary, the summarized material must have been previously admitted. *Irvin*, 682 F.3d at 1262-63; *United States v. Stiger*, 413 F.3d 1185, 1198 (10th Cir. 2005) (summary based on "non-trial sources" could not be properly admitted under Rule 611(a)). Case law generally requires that when a district court allows this type of summary, it should also give the jury an instruction stating that the summary is an aid only and not itself evidence. *White*, 737 F.3d at 1135; *Renteria*, 720 F.3d at 1253.

The Tenth Circuit has adopted a two-part test to judge the admissibility of Rule 611(a) summaries. *Renteria*, 720 F.3d at 1253. First, the summary chart must assist the jury "in ascertaining the truth." *Id.* (internal quotation mark omitted). "Relevant factors include the length of trial, the complexity of case, and the possible confusion generated by a large number of exhibits." *Id.* Second, the court must consider any possible prejudice to the opposing party. *Id.* Possible factors include whether "the preparer was available for cross examination and whether the court gave any limiting instructions." *Id.*

41

***(2).   Because all evidence contained in the summary testimony and charts was already on the record, the district court did not abuse its discretion.***

The district court did not abuse its discretion in allowing Dugan's testimony and charts as Rule 611(a) summaries of information already in the record. *E.g.*, *White*, 737 F.3d at 1135-36; *Renteria*, 720 F.3d at 1252-53. The only information included that was not previously admitted was the correlation of the latitude and longitude of Cricket cellular towers to points on a map of Albuquerque. Recognizing this potential issue, the State addressed it before trial. **[1-29-13 Tr. 39:10-40:16]**; **[2-4-13 Tr. 76:13-77:17]**; **[Ex. 121]**. The State suggested that this information was subject to judicial notice, but the defense indicated it did not "anticipate a problem" with the coordinates. **[1-29-13 Tr. 39:10-40:16]**; *see also* **[2-4-13 Tr. 105:17-24]**.

By the time Dugan testified, all the other information in her summaries was already in the record, including the cell phone call records and the attribution of ownership to various numbers. **[1-29-13 Tr. 168:13-169:11]**; **[1-30-13 Tr. 175:16-176:11]**; **[Exs. 114-121]**.

Although the district court did not specifically cite Rule 611(a), it recognized the purpose of the summary: "This is more of a compilation

42

and summary of the evidence that has preceded it." [**2-4-13 Tr. 106:10-11**]. The defense appeared to agree that everything had been admitted and objected only on grounds of speculation. [**2-4-13 Tr. 106:16-23**].

Applying the Tenth Circuit's two-part test to this record, there was no abuse of discretion. *Renteria*, 720 F.3d at 1252-53. The trial took more than a calendar week, with five full days of testimony and more than 100 exhibits, including several exhibits that were voluminous cellular phone records. [**Exs. 114-121**]. Given this complexity, the district court could reasonably conclude the distillation contained in the summaries "aid[ed] the jury in ascertaining the truth." *Id.* at 1253. The summaries also appear to accurately reflect the preceding testimony. *Compare* [**Exs. 114-121**] *with* [**Exs. 122-25**]. Their utility therefore outweighed any potential prejudice. *Id.* Dugan was subject to cross-examination. *Id.* Both direct and cross made clear that she had no independent knowledge of the data and had only produced summary charts based on material provided to her. [**2-4-13 Tr. 107:10-108:2; 112:21-114:9**]; *Renteria*, 720 F.3d at 1253.

The district court should have instructed the jury that the summaries were not substantive evidence. *White*, 737 F.3d at 1135;

43

*Renteria*, 720 F.3d at 1253. There is also some case law suggesting that the summary charts should not have be admitted as exhibits but only displayed as aids during the witness's testimony. *Janati*, 374 F.3d at 273; *United State v. Harms*, 442 F.3d 367, 375 (5th Cir. 2006); *but see Renteria*, 720 F.3d at 1253 (Tenth Circuit framework does not appear to prohibit admission of the summary charts as trial exhibits); *United States v. Johnson*, 54 F.3d 1150, 1159 (4th Cir. 1995).

In this case, "[a]lthough there were no limiting instructions . . . none were requested. . ." *Renteria*, 720 F.3d at 1253. Nor did Rodriguez object to admission of the exhibits any grounds other than speculation. [**2-4-13 Tr. 108:3-11**]. Overall, the record does not show that the district court abused its discretion in allowing the summary charts. *Renteria*, 720 F.3d at 1253 (no abuse of discretion in admitting summary charts even though no limiting instruction given).

### (3).   *Rodriguez's speculation objection was untimely and inapplicable in the context of Rule 611 summary charts.*

The district court also did not abuse its discretion when it overruled Rodriguez's speculation objection. [**2-4-13 Tr. 106:16-107:4**]. This objection was unfounded for two reasons. First, as discussed above,

the evidence summarized was already on the record. Rodriguez never objected to the initial attribution of ownership to any of the cellular phone numbers. Thus, by objecting for the first time during the State's final, summary witness, "the horse was already out of the barn when Defendant tried to shut the door." *State v. Tapia*, 2015–NMCA–048, ¶ 40, 347 P.3d 738 (internal quotation mark omitted), *cert. denied*, 2015–NMCERT–004. The objection was untimely. *Id.*; *State v. Garcia*, 2005–NMCA–042, ¶ 39, 137 N.M. 315.

Second, a speculation objection is out of place during summary testimony. Because a Rule 611(a) summary is not admitted to prove its contents and only reflects evidence already of record, the preparer need not have personal knowledge of the material. *Renteria*, 720 F.3d at 1252-53 (Special Agent constructed charts based on testimony of other witnesses); *see also United States v. Vitrano*, 747 F.3d 922, 924 (7th Cir. 2014) ("Preparing an exhibit for trial is not in itself testimonial"). Rather than normal rules of foundation and personal knowledge, the integrity of a Rule 611(a) summary is protected by the district court's duty to ensure that only previously admitted evidence "forms the basis of the summary." *Stiger*, 413 F.3d at 1198.

45

In this case, the summary reflected only (1) previously admitted evidence; and (2) the plotting of geographic coordinates, which was not challenged at any stage and was ultimately the type of fact that could be judicially noticed if necessary. **[1-29-13 Tr. 39:10-40:16]**; **[2-4-13 Tr. 105:17-24]**; *Pahls v. Thomas*, 718 F.3d 1210, 1216 n. 1 (10th Cir. 2013) (geographical facts are uniquely susceptible to judicial notice). Dugan's testimony made clear that she did not have independent knowledge. **[2-4-13 Tr. 112:21-114:17]**. She testified that her charts accurately reflected the records not that those records accurately reflected historical fact. *Id.* The district court therefore did not abuse its discretion in overruling Rodriguez's speculation objection.

### (4).  *Any preserved evidentiary error was harmless.*

If there was any error with respect to Rodriguez's preserved claims, that error was harmless. *Astorga*, 2015–NMSC–007, ¶¶ 42, 52 (preserved errors are reviewed for harmless error). Because the summary charts involved only previously admitted testimony, they are by definition cumulative. *Cf. State v. Serna*, 2013–NMSC–033, ¶ 23, 305 P.3d 936. Because the jury also had access to the underlying the underlying provider records and the previous testimony establishing

46

ownership, any defect in admission of the charts could not have affected the jury's decision to a reasonable probability. *Cf. id.*

## II.   Sufficiency of the Evidence

### A.   Standard of Review

Reviewing a conviction for sufficient evidence, this Court examines the evidence, both direct and circumstantial, to see whether a rational jury could have found every element beyond a reasonable doubt. *Astorga*, 2015–NMSC–007, ¶ 57. The evidence must be viewed in the light most favorable to the verdict, "indulging all reasonable inferences and resolving all conflicts in the evidence in favor" of the jury's decision. *Id.* Evidence contrary to the verdict is not grounds for reversal, because it is the jury's prerogative to weigh the evidence and reject the defendant's version of the facts. *E.g., id.*

### B.   Armed Robbery

To convict Rodriguez of armed robbery, the jury had to find, among other things, that Rodriguez "took the cellular phone by force or threatened force or violence." **[RP 165]**; UJI 14-1621 NMRA; § 30-16-2. Rodriguez argues that there was insufficient evidence that he took

David's phone by force or violence because he may have taken the phone before the murders or after the murders "as an afterthought." [**BIC 33**].

The problem with Rodriguez's argument is that the "killing and robbery were part of the same transaction of events." *State v. Barela*, N.M. Sup. Ct. no. 32,506, ¶¶ 88-89 (Mar. 28, 2013) (non-precedential). When a defendant kills the victim and takes the victim's property in the same transaction, the defendant commits robbery. *Id*. It is "irrelevant" whether the defendant takes the property before or after killing the victim. *Id*.; *People v. Letner*, 235 P.3d 62, 114 (Cal. 2010); *James v. State*, 618 S.E.2d 133 (Ga.Ct.App. 2005). As long as the State shows a "continuous chain of events," the evidence does not have to conclusively establish that the defendant had the intent to steal prior to the killing. *Batiste v. State*, 121 So.3d 808, 842 (Miss. 2013); *State v. Myers*, 640 P.2d 1245, 1249-50 (Kan. 1982). Instead, "when one kills another and takes substantial property from the victim, it is ordinarily reasonable to presume the killing was for purposes of robbery." *People v. Hughes*, 39 P.3d 432, 477 (Cal. 2002) (internal quotation marks omitted).

The jury had sufficient evidence to conclude that Rodriguez killed David and took his phone in a single transaction. Jarlena Anderson

heard David tell Rodriguez and his brother that he "didn't have anything." [**1-29-13 Tr. 93:11-18**]. She also heard Connie offer them "leather jackets," just before she and David were killed. [**1-29-13 Tr. 84:7-85:13**]. David's out-turned pockets show that even if the phone was not taken from his pockets, he was searched. [**1-29-13 Tr. 128:13-23**]; [**Ex. 7**]. This evidence supports an inference that Rodriguez and his brother were seeking items of value. After the killings, Anderson fled the house and returned within minutes with her sister. [**1-29-13 Tr. 85:15-86:18; 100:11-101:23**]. There was simply not enough time for the phone to have been taken other than in connection with the murder. Finally, the jury could simply have credited Martinez's testimony that Rodriguez killed David and Connie while robbing them. [**1-29-13 Tr. 167:10-12; 171:13-22**]; *see, e.g., Cabezuela*, 2015–NMSC–016, ¶ 23 (generally, reviewing court will not "second-guess" jury's decisions on witness credibility). Substantial evidence therefore supports the jury's decision to convict Rodriguez of armed robbery. *Barela*, no. 32,506, ¶¶ 88-29.

In this case, the jury was given special verdict forms for both felony murder and deliberate intent murder. [**RP 120, 121, 124, 125**].

The jury specifically found Rodriguez guilty of both alternatives. *Id*. Therefore, even if this Court vacates the robbery conviction and the felony murder conviction that depends on it, the conviction for deliberate-intent murder should still stand.

## C.    Identity

Rodriguez argues that insufficient evidence connected him to the crimes. **[BIC 34-38]**. Mario Martinez, however, testified that Rodriguez told him that Rodriguez and his brother killed David and Connie. **[1-29-13 Tr. 165:17-167:12]**. Thus, the simple answer to Rodriguez's argument is that the jury believed Martinez. As the factfinder, the jury was entitled to do so. *E.g., Cabezuela*, 2015–NMSC–016, ¶ 23.

Rodriguez argues that Martinez's testimony is "inherently non-credible." **[BIC 36]**. This argument mistakes both the facts and the law. Factually, Martinez's testimony about Rodriguez's confession was consistent with the other testimony and the physical evidence. The jury could reasonably infer that David was expecting a visit from "Rigo" just before he was killed. **[1-29-13 Tr. 79:19-81:1]**. Martinez was able to describe the means of killing and explain the bloody footprint at the scene. **[1-29-13 Tr. 168:5-10]**; **[1-30-13 Tr. 23:1-15; 26:12-23]**; **[Exs. 8,**

**9**]. Not all the facts had been released to the public, suggesting Martinez had indeed learned them from the killer. [**2-4-13 Tr. 11:7-14:21**]. Martinez also testified that David had cheated Rodriguez in past drug deals, providing a possible motive for the murders. [**1-29-13 Tr. 169:20-170:21**]. Based on these facts, the jury was rationally able to find Martinez credible. *E.g., Cabezuela*, 2015–NMSC–016, ¶ 23 (it is the jury's prerogative as factfinder to determine witness credibility).

Legally, the only time an appellate court should disregard a factfinder's credibility determination is when "there is a physical impossibility that the statements are true or the falsity of the statement is apparent without resort to inferences or deductions." *State v. Graham*, 2005–NMSC–004, ¶ 11, 137 N.M. 197. Rodriguez's argument fails both prongs of this test. First, there was nothing in Martinez's testimony that was physically impossible. Second, Rodriguez's argument depends on a chain of inferences attempting to paint Martinez as the "most likely suspect" and therefore "non-credible." [**BIC 36**]. Not only does this contradict the record, it is clearly "resort to inferences or deductions" and therefore provides no grounds to set aside the jury's credibility determination. *Graham*, 2005–NMSC–004, ¶ 11.

Two other points also support identification of Rodriguez as one of the killers. First, "Rigo" and "Rico" are similar enough to suggest that when Anderson initially thought she heard "Rico," she actually heard "Rigo." [**1-29-13 Tr. 80:20-23**]. The jury could have concluded that before the murderers arrived, David told Connie, "Rigo was coming over," and that during the murders, Connie pleaded, "Why are you doing this, Rigo?" [**1-29-13 Tr. 80:17-81:1; 84:7-85:13**].

Second, the jury could reasonably find that cellular phone evidence helped identify Rodriguez. Even disregarding the ownership of 435-5944, the remaining evidence still shows that Rodriguez exchanged calls with David leading up to the murder and then went silent for four hours following the murder. [**2-4-13 Tr. 38:10-16; 44:23-45:17**]; [**Ex. 115 pg. 156-57**]. While not conclusive by itself, this circumstantial evidence provides further support for the jury's verdict. *See State v. Rojo*, 1999–NMSC–001, ¶ 23, 126 N.M. 438 (circumstantial links that are insufficient alone may combine to support the conviction).

Taken as a whole, and viewed in the light most favorable to the verdict, the evidence supports the jury's conclusion that Rodriguez was one of the murderers. *See Astorga*, 2015–NMSC–007, ¶ 57 (standard is

whether a "rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction") (emphasis in original).

## D.      Deliberate Intent and Conspiracy to Murder Connie

A conviction for first degree murder must rest on evidence of a "deliberate" intention to kill. **[RP 154]**; *State v. Guerra*, 2012–NMSC–027, ¶ 28, 284 P.3d 1076; § 30-2-1(A)(1); UJI 14-201 NMRA. Deliberate intent means a "calculated judgment" to kill, rather than a "mere unconsidered and rash impulse." UJI 14-201. The judgment, however, "may be arrived at in a short period of time." *Id*.

A conviction for conspiracy to commit murder by deliberate killing depends on proof that "the defendant and another person by words or acts agreed together to commit" the crime. **[RP 163]**; UJI 14-2810 NMRA; § 30-28-2. It is unnecessary to prove a "formal agreement." *State v. Bahney*, 2012–NMCA–039, ¶ 37, 274 P.3d 134. Instead, the agreement must often be inferred from the surrounding circumstances. *Id*.

Rodriguez argues that there was insufficient evidence to support his convictions for deliberately murdering Connie and conspiring to deliberately murder her. **[BIC 38-39]**. Rodriguez makes no argument on

53

this point with respect to David, apparently conceding that David's killer acted with deliberate intent.

After Rodriguez and his brother killed David, Jarlena Anderson heard Connie "pleading for her life" and saying, "Why are you doing this, Rigo? Don't do this. I won't tell." [**1-29-13 Tr. 84:20-85:24**]. Like a victim's attempts to flee, a victim's pleas for mercy should be considered circumstantial evidence of the killer's deliberate intent. *Cf. State v. Sosa*, 2000–NMSC–036, ¶ 13, 129 N.M. 767 (victim's attempt to escape); *see also State v. Lane*, 476 S.E.2d 325, 327 (N.C. 1996) (deliberation shown in part by victim "begging for his life.").

The attackers spoke to each other in Spanish just before they killed Connie. [**1-29-13 Tr. 84:20-85:24; 92:6-93:18**]. The reasonable inference from this evidence is that they discussed what to do to her before killing her. This supports the jury's findings of both deliberation and conspiracy. UJI 14-201; UJI 14-2810.

A jury may also draw "rational inferences of deliberation" from the number of wounds and evidence of struggle. *State v. Flores*, 2010–NMSC–002, ¶ 21, 147 N.M. 542; *see also, e.g., Guerra*, 2012–NMSC–027, ¶ 29 (thirteen stab wounds was evidence of "overkill"

54

ATTACHMENT (B.)

2 Homicide Canvass Questionaires
c̄ copy of bloody footprints c̄
Rigoberto's footprints taken at P.N.M.

## HOMICIDE CANVASS QUESTIONAIRE

1000 9180

CASE #:

ADDRESS: 640.5 KESWICK Road NW.        VACANT: ☐        NO ONE HOME:

NAME: Rebecca M. Otero        DOB: 10-31-48        PHONE: 505 83903

(Type of Work - Company Name)

EMPLOYMENT: Self- Cosmetologists ADDRESS: 9230 Menaul Blvd. N.E PHONE: 298471

OTHER RESIDENTS OF THIS ADDRESS:

(Names and Ages) GRANDSON - age 9 - Darryn Otero

DID YOU KNOW OF THE OFFENSE?        ☒ YES        ☐ NO

HOW DID YOU FIRST LEARN OF IT? (WHEN?) tonight from neighbor, Crime ot tonight from.

Looking out my window. Watching the two men and two women riding their bikes early and late evening AM-PM. Stoping in front of my home drive way and exchanging (something tor cash) to passenger or

WERE YOU AT THE CRIME SCENE AT ANY TIME?        ☒ NO        ☐ YES driver.

(If YES - When, What Part, Anything Touched?)

WHAT KNOWLEDGE DO YOU HAVE OF THE CRIME? (List suspects, potential witnesses, etc.) Don't kn

Sometimes it was one rider on bike or two bikes 2 people. Stopping at 64th + Ouray to exchange. I could see out my back window. Obvious what was going on.

DID YOU KNOW THE VICTIM?        ☐ YES        ☒ NO Not personally - just saw

them when I was out side.

WHAT WAS YOUR RELATIONSHIP WITH THE VICTIM? (Date, Time, Location Last Seen or Talked To)

I didn't speak to them.

I had no need or want.

Afraid for my grand chi

STATEMENT TAKEN FROM THIS WITNESS?        ☐ YES        ☐ NO

COMMENTS: read this

REPORTING OFFICER: W. Jury        DATE: 1-27-10        TIME: 9:15 pm

PD 1384

## HOMICIDE CANVASS QUESTIONAIRE

CASE #:

ADDRESS: 6415 Keswick NW.   VACANT: ☐   NO ONE HOME:

NAME: Eric Hall   DOB: 10/20/61   PHONE: 553

(Type of Work - Company Name)
EMPLOYMENT: Field Tech   ADDRESS:   PHONE: 9506

OTHER RESIDENTS OF THIS ADDRESS:
(Names and Ages) Esther Hall (50)

DID YOU KNOW OF THE OFFENSE?  ☐ YES   ☐ NO

HOW DID YOU FIRST LEARN OF IT?  (WHEN?)

WERE YOU AT THE CRIME SCENE AT ANY TIME?  ☒ NO   ☐ YES
(If YES - When, What Part, Anything Touched?)

*read this

WHAT KNOWLEDGE DO YOU HAVE OF THE CRIME?  (List suspects, potential witnesses, etc.)
Something was bound to happen. Several people knew of drug dealing in neighborhood.

DID YOU KNOW THE VICTIM?  ☐ YES   ☐ NO

WHAT WAS YOUR RELATIONSHIP WITH THE VICTIM? (Date, Time, Location Last Seen or Talked To)
The last vehicle I saw at the house was a white Tahoe, 4 dr. It seems there possibly was arguing between victim + vehicle. At approx 4:30 pm

STATEMENT TAKEN FROM THIS WITNESS?  ☐ YES   ☐ NO

COMMENTS:
I have seen heavy traffic at this house for several months. Multiple cars off and on every day. If not cars, victim would be on his mountain bike doing deals around the corner of street

REPORTING OFFICER: M. Surly   1/22/10   TIME: 2030



my shoe

Mr Rigoberto's Shoe



Albuquerque Police Department Criminalist

2/19/10

E. Middle of carpet East of D

Albuquerque Police Department Criminalistics

E. Middle of carpet East of D

1
2/19/12

Albuquerque Police Department Cri

ATTATCHMENT (C.)

[ATTACHMENT C.]

Petitioner Rigoberto Rodriguez, presented a Prima facie of actual innocence evidence through substantial and concrete evidence by way of bloody shoe prints that "were found" in and around victim's body Connie Maldonado. DNA evidence did not implicate petitioners or his co-defendant. Petitioner was or is able to provide that a sample from David's pants which were turnned inside out indicated the DNA was of an unidentified person. Furthermore the Albuquerque Police Department failed to investigate by not canvassing the area of potential eye witness's which were nieghbors of the victims or of other suspects which were never pursued by the Albuverque, Police Department. In which further substantiates the Petitioners claim that his Counsel was Ineffective of Assistence b/c his Counsel should have pursued this issue during trial but failed to do so.

Shoeprints found at the scene perpetuate the petitioners Claim of Ineffective assistance of counsel as the petitioners counsel failed to investigate bloody shoeprints that were alreagdedly found at the crime scene in and around the victims. Petitioner had asked the District Court to grant him a new trial in accordence with new and substantial piece of evidence (BLOODY SHOE PRINTS). The ~~size~~ of shoeprints at the crime scene was a print of exactly (9 & ½") Nine and one half inches. Petitioner asserts that the District Court should undoubtedly grant the Petitioner Evidentory value of the shoeprints and should Constitute for a new trial. due to the fact the the Petitioner Counsel failed to investigate this issue.

Continue on next page —

(1.)

CONTINUUM
of
ATTACHMENT (C.)

Furthermore The DISTRICT COURT Refers to Carpet pieces being in evidence for more than (8yrs) eight years. Rendering this evidence inconclusive. Petitioner Continues to assert that Bloody shoeprints where Not examined by The Courts FORENSIC field investigators Nor were these shoeprints evaluated by The JURY. This Remains to be substantial piece of evidence for Petitioners pursuit for a NEW TRIAL. STATE WITNESS did attempt to convey to the Jury that The Petitioner had stepped in the Blood. ~~The~~ The EXPERT INVESTIGATOR at the evidentiary heering proved that ~~any~~ ONLY Capacity could have the Petitioner of stepped in the Blood that was around the Victim. Petitioners shoe at the age of 33yrs and at 6'4" tall his shoe size measures (12½ inches) Twelve and one half inches in length. The Largest shoeprint found in the Blood measured (9½ins) Nine and one half inches in length.

Also in Consideration of this legal issue of failure to investigate petitioner also asserts that Confidential Informant by THE STATE OF NEW MEXICO, used against the Petitioner indicated that The Petitioner stepped in Blood. The STATES INFORMANT was deemed Credible by what STANDARD?" FOR TESTIMONY ~~of something~~ (BUT) THE STATE OF N.M. has NOT allowed FOR The Petitioner to discredit The STATE CI.'s credibility fully if Testimony of specifies are being used to implicate Petitioner. Ineffective Assistance of COUNSEL does EXIST if Counsels actions failed To Conduct an independent testing with Respect to the shoeprints and Petitioners shoe size.

Rigoberto Rodriguez
6960 W. Millen Dr.
Hobbs N.M. 88244
c/o GEO Group Inc.

Pete Domenici
United State Court House
333 Lomas Blvd. NW
Suite 270
Albuquerque N.M.
87102

RECEIVED
UNITED STATES DISTRICT CO
ALBUQUERQUE, NEW MEXIC

NOV 16 2021

MITCHELL R. ELFERS
CLERK